UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

SECURITIES AND EXCHANGE
COMMISSION,
100 F Street, N.E.
Washington, D.C. 20549

           Plaintiff,

    v.

DAVID R. HUMPHREY,

c/o Kirkland & Ellis LLP
655 Fifteenth Street NW
Washington, DC 20005-5793

           Defendant.

---

Civil Action No. 17:CV:850

## COMPLAINT

Plaintiff Securities and Exchange Commission ("SEC") alleges:

### SUMMARY

1. From approximately 2001 to 2014, Defendant David R. Humphrey ("Humphrey") improperly traded in securities while he was an employee of the SEC. As an SEC employee, Humphrey was subject to a panoply of ethics rules governing securities holdings and transactions. For example, he was prohibited from buying or selling options and was required to disclose his securities holdings and transactions to the SEC Office of the Ethics Counsel ("Ethics Office") in annual filings. Beginning in August 2010, as an SEC employee Humphrey was also prohibited from buying or holding the securities of any company directly regulated by the SEC and he was

required to obtain pre-clearance from the Ethics Office before trading in any non-prohibited securities.

2. Humphrey ignored the ethics rules and engaged in a multi-year scheme to trade in options and other prohibited securities on his own behalf and on behalf of his mother and a childhood friend ("Friend"). During this time, Humphrey took affirmative steps to conceal his trading from the Ethics Office and others. Significantly, he never sought pre-clearance from the Ethics Office for these trades and he filed forms with the Ethics Office that falsely represented his securities holdings. He also made misleading representations on forms filed with broker-dealers and he failed to disclose to Friend that this trading violated government ethics rules and would result in his submitting false annual certifications of his trading activity to the SEC. When confronted by agents of the SEC Office of Inspector General ("OIG") in 2014, Humphrey falsely denied that he had traded in options or in his mother's brokerage account while employed at the SEC.

3. Thus, Humphrey violated, and unless restrained and enjoined will again violate, Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5(a) thereunder [17 C.F.R. § 240.10b-5(a)] and Section 17(a)(1) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)].

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to Sections 20 and 22 of the Securities Act [15 U.S.C. §§ 77t & 77v] and Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), & 78aa].

5.  Venue in the District of Columbia is proper pursuant to Section 22 of the Securities Act [15 U.S.C. § 77v] and Section 27 of the Exchange Act [15 U.S.C. § 78aa] because a substantial portion of the conduct alleged in this Complaint occurred here.

## DEFENDANT

6.  David R. Humphrey, 60, resides in Vail, Arizona. From March 15, 1998, to August 8, 2014, with the exception of a short period of time in 1999, Humphrey was employed as a staff accountant, and later branch chief, in the SEC Division of Corporation Finance. Humphrey's office was located at SEC headquarters in Washington, D.C. Humphrey was a licensed certified public accountant from 1978 to 2000.

## FACTUAL ALLEGATIONS

7.  During his tenure at the SEC, Humphrey received extensive training from the Ethics Office about the ethics rules governing securities holdings and transactions by SEC employees. The ethics rules, among other things, constrained his ability to buy or sell securities; required him to pre-clear and report transactions and holdings in certain types of securities; and required him to hold certain securities for a certain period of time before he could sell them. Specifically, the ethics rules, as supplemented in 2010, direct that SEC employees are:

- prohibited from recommending or suggesting to any person the purchase or sale of a security that the employee could not purchase or sell because of the restrictions contained in the ethics rules [5 C.F.R. § 4401.102(b)(2)(ii)];

- prohibited from knowingly purchasing or holding a security or other financial interest in an entity directly regulated by the SEC [5 C.F.R. § 4401.102(c)(1)];

- prohibited from engaging in transactions involving financial instruments that are derivatives of securities [5 C.F.R. § 4401.102(c)(6)];

- required to confirm, before entering into certain security transactions, that the security is not prohibited or restricted as to them by clearing the transaction. An employee will have five business days after clearance to effect a transaction [5 C.F.R. § 4401.102(d)];

3

- required, as a general rule, to hold a security purchased after commencement of employment with the SEC for a minimum of six months from the trade date [5 C.F.R. § 4401.102(e)]; and

- as a general rule, required to report and certify all securities holdings annually and submit duplicate statements for every account containing reportable securities. Employees must report all purchases, sales, acquisitions, or dispositions of securities within five business days after receipt of confirmation of the transaction [5 C.F.R. § 4401.102(f)].

Humphrey knew or was reckless in not knowing that he was bound by these ethics rules.

8. Humphrey engaged in trading for his own account in violation of the ethics rules from approximately 2001 until late 2009, and from late 2012 through his August 2014 departure from the SEC.

9. Beginning in approximately 2001, Humphrey devised and executed a scheme to trade in options—a type of derivative—and other prohibited securities, in violation of applicable ethics rules. He largely conducted this improper trading strategy using his SEC computer during business hours. Humphrey's trading strategy involved writing uncovered options against an index and occasionally an individual stock. Humphrey would receive proceeds, or "the premium," for selling the option with the hope that the option would expire worthless and Humphrey would retain the premium. If the market moved against him, Humphrey could be forced to buy or sell the underlying security, often at a disadvantageous price. This happened on a number of occasions and, on offsetting those underlying positions, caused significant losses.

10. Humphrey initially employed this trading strategy by selling options in the NASDAQ-100 Trust and its successor, Powershares QQQ Trust Series 1 ("QQQ"), exchange-traded funds that track the Nasdaq-100 Index. Humphrey later employed the strategy by selling options in a utilities index fund, SPDR XLU, and options on shares of individual issuers, including options on shares of Citigroup Inc. ("Citigroup")—a prohibited holding because Citigroup is directly regulated by the SEC—and options on shares of Under Armour, Inc. ("Under Armour").

Humphrey engaged in over one hundred options transactions between 2005 and 2014 alone. Humphrey predominantly executed his trading strategy in an account at E*Trade Financial Corporation ("E*Trade"), an online brokerage firm. Humphrey did not pre-clear any of his options trading or report any of his options trading or holdings, including in his annual Confidential Financial Disclosure Report (OGE Form 450) or annual certification to the Ethics Office. Moreover, on a number of occasions, Humphrey's options were exercised by the option holder, forcing Humphrey to buy the underlying security. Humphrey generally then sold that security, often at a loss, without holding it for at least six months. Humphrey never pre-cleared with, or reported to, the Ethics Office the transactions in the underlying security.

11. As part of his scheme, Humphrey provided misleading information to E*Trade. In 2012, Humphrey upgraded his E*Trade account. The account upgrade documents asked for his employer and business telephone numbers. Humphrey did not disclose that he worked for the SEC and he did not provide his SEC telephone number as his business number. Rather, Humphrey wrote that he worked for the "Federal Government" and he provided his cell phone number.

12. On one occasion, Humphrey sold put options on shares of Citigroup for his own account in 2013. Humphrey was prohibited from both transactions involving derivatives and transactions involving the securities of an entity directly regulated by the SEC.

13. In addition, while he sought and obtained preclearance for his 2014 purchase of Under Armour stock, he failed to seek pre-clearance for the sale of this stock. He sold his Under Armour stock within weeks of purchasing it—in violation of the six-month holding period—making a profit of $51,917.

14. Humphrey also traded options on behalf of his mother and Friend. Humphrey traded options and other prohibited securities, including QQQ options and Citigroup options and

stock, in his mother's E*Trade account from at least 2006 through his August 2014 departure from the SEC. Humphrey did not seek pre-clearance from the Ethics Office for any of these trades nor did he ever report to the Ethics Office that he was trading securities in his mother's brokerage account.

15. Humphrey similarly began trading options in the TD Ameritrade, Inc. ("TD Ameritrade") account of his Friend in May 2003, and he continued to trade options and other prohibited securities, including QQQ options and Citigroup options and stock, through his August 2014 departure from the SEC. Humphrey did not disclose to Friend that his trading in these securities violated government ethics rules and would result in his submission of false annual certifications to the SEC. Humphrey did not seek pre-clearance from the Ethics Office for these trades nor did he ever report to the Ethics Office that he was trading in Friend's brokerage account.

16. In September 2006, Humphrey helped Friend complete and submit a Margin/Options Account Upgrade Form to TD Ameritrade. The form provided, "Due to the risks involved in options, we are required to obtain the following information. Financial information section must be completed to be considered for options." The form falsely stated that Friend had "6 – 9" years of investment experience and that Friend's investment knowledge was "[e]xtensive." In reality, Friend was an unsophisticated investor who had limited knowledge of securities trading and no personal experience trading in options.

17. In 2014, the OIG learned of Humphrey's improper trading. During a voluntary interview with OIG agents in May 2014, Humphrey acknowledged that he understood the ethics rules, but—in keeping with his prior efforts to conceal his improper trading—he falsely claimed that he had not traded in options or in his mother's brokerage account while employed at the SEC.

## FIRST CLAIM FOR RELIEF

### Humphrey Violated Section 10(b) of the Exchange Act and Rule 10b-5(a) Thereunder

18. Paragraphs 1 through 17 are re-alleged and incorporated herein by reference.

19. Humphrey, in connection with the purchase or sale of a security, by the use of means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange, directly or indirectly, with scienter: (a) employed devices, schemes, or artifices to defraud; (b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon any person.

20. By engaging in the conduct described above, Humphrey violated, and unless restrained and enjoined will again violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5(a) thereunder [17 C.F.R. § 240.10b-5(a)].

## SECOND CLAIM FOR RELIEF

### Humphrey Violated Section 17(a)(1) of the Securities Act

21. Paragraphs 1 through 20 are re-alleged and incorporated herein by reference.

22. Humphrey, in the offer or sale of securities and by the use of means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly: (a) with scienter, employed devices, schemes, or artifices to defraud; (b) with negligence, obtained money or property by means of untrue statements of material fact or by omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) with negligence, engaged in

transactions, practices, or courses of business which operated or would have operated as a fraud or deceit upon the purchaser of a security.

23. By engaging in the conduct described above, Humphrey violated, and unless restrained and enjoined will again violate, Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)].

## **PRAYER FOR RELIEF**

WHEREFORE, the SEC respectfully requests that the Court enter a Final Judgment:

A. Permanently restraining and enjoining Humphrey, and his agents, servants, employees, attorneys, and all persons in active concert or participation with him who receive actual notice of this injunction by personal service or otherwise, from violating the securities statutes and rule set forth in this Complaint;

B. Ordering Humphrey to disgorge all ill-gotten gains, illegal losses avoided, and unjust enrichment wrongfully obtained as a result of his illegal conduct, plus prejudgment interest thereon;

C. Ordering Humphrey to pay civil penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)]; and

    D.    Granting such other and further relief as the Court deems just and appropriate.

Dated: May 9, 2017
Washington, D.C.

Respectfully submitted,

/s/ Tom Bednar

Thomas A. Bednar, D.C. Bar No. 493640
Gary M. Zinkgraf
Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549
Telephone:  (202) 551-6218 (Bednar)
Facsimile:  (202) 772-9282
Email:  bednart@sec.gov

*Attorneys for Plaintiff Securities and Exchange Commission*

Of Counsel:

Gerald W. Hodgkins
Jeffrey P. Weiss